UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| DYTANYA ROBINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:25-cv-04030-SLD-RLH |
| | ) |
| CITY OF ROCK ISLAND, IL and | ) |
| TIMOTHY J. McCLOUD, in his Official | ) |
| Capacity, | ) |
| | ) |
| Defendants. | ) |

ORDER

Before the Court is Defendants City of Rock Island ("Rock Island") and Timothy J. McCloud's Partial Motion to Dismiss Plaintiff Dytanya Robinson's First Amended Complaint and Supporting Memorandum ("Partial Motion to Dismiss"), ECF No. 10. For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**[1]

Plaintiff was hired by the City of Rock Island as a police officer on March 30, 1998, and became the first black female officer in Rock Island history. In this lawsuit, she alleges that discrimination by the Rock Island Police Department has negatively impacted her career in law enforcement. The discrimination began in 2001—at that time, Plaintiff filed a complaint against a Sergeant who had harassed her, but no record of that complaint was kept by Rock Island or the Fraternal Order of Police. Around 2004 and 2005, as part of fulfilling requirements necessary to earn her bachelor's degree, she requested to serve an internship with the Rock Island Police

---

[1] At the motion to dismiss stage, the court "accept[s] as true all well-pleaded facts in the complaint, and draw[s] all reasonable inferences in [the nonmovant]'s favor." *Pierce v. Zoetis, Inc*., 818 F.3d 274, 277 (7th Cir. 2016). Unless otherwise noted, the factual background is drawn from Plaintiff's First Amended Complaint, ECF No. 8.

1

Department.  This request was denied due to her employment with the police department, even though other white male employees were allowed to complete similar internships with Rock Island.

In 2011, after Plaintiff became the first black women promoted to Sergeant in Rock Island, she was treated differently than white male employees when she sought a promotion to a position titled Technical Services Sergeant.  Plaintiff was initially denied the position because she had less seniority than the other candidates.  Although, when she sought the position again in 2016, the position was filled by a white male who had less seniority than her.  Rock Island explained that the differing criteria was because the white male officer had children and was involved in their lives; however, Plaintiff also had children and at the time was solely responsible for raising her grandson.

The disparate treatment continued as Plaintiff sought a promotion to Lieutenant—despite Rock Island's emphasis on seniority, white men who were promoted to Sergeant after her were promoted to Lieutenant before her.  An officer is eligible to become a Lieutenant after two years as a Sergeant, and promotions are based partially on the promotional exam score which is a combination of written exam results, an oral interview with the Police and Fire Commission, an evaluation by the Police Chief, and seniority.  The eligibility lists for a promotion remain in effect for two years unless a vacancy exists during that period that was not filled—when there is an unfilled vacancy, the list is extended for the period of time that the vacancy had existed during that two-year period.  The top five individuals on the Certified Promotions List are eligible for a promotion to Lieutenant.

In 2018, Plaintiff participated in the promotion process and was fourth on the eligibility list to be promoted to Lieutenant, but was not, because the three vacancies were filed by the first

three people on the eligibility list. Two years later, she participated in the promotional process and was again fourth on the list. After the top three officers on the list were promoted, a fourth Lieutenant retired while that eligibility list remained active. Rather than promote Plaintiff, Rock Island elected to replace the Lieutenant position with a new Sergeant position. This restructuring effectively denied her of the promotion to Lieutenant to which she otherwise would have been entitled. When she participated in the promotional process again in 2022, Plaintiff was first on the eligibility list which was set to expire two years later, and, in early 2024, a vacancy was created. While past practice for the police department was to promote the person with the highest promotional exam score, *i.e.*, the first eligible officer, Rock Island allowed the vacancy to remain open in contravention of the promotion policy. Finally, in 2024, she again participated in this process and was promoted to Lieutenant.

Plaintiff details other incidents of disparate treatment beyond her attempts to seek promotions. After contracting COVID-19 which resulted in her being in a coma, Plaintiff returned to work and was required to pass a physical agility test that no other employee with COVID-19 was required to pass. Also, in 2023, she reported discrimination to Deputy Chief Timothy J. McCloud and raised concerns about the Department's preference to promote younger officers. Around the same time, she was cleared of any wrongdoing after an investigation was conducted by then-Chief Landi into Plaintiff's relationship with a childhood friend who, unbeknownst to her, was a felon. However, after Chief Landi retired, McCloud was promoted and reopened the investigation into Plaintiff—she was subsequently disciplined on June 6, 2024, even though she was previously cleared of any wrongdoing.

In 2023, Plaintiff's request to attend Northwestern University's School of Police Staff and Command online course was denied—Rock Island stated that it would not pay for her to attend

3

the course and that it wanted to send younger Lieutenants. Then, Rock Island sent two Lieutenants and a Sergeant—all white males—with less seniority than Plaintiff, paid tuition for all three officers, and allowed them to use work time to take the course. A year later, she again requested to take the course, paying for it herself and on her own time. While Rock Island reimbursed her for the tuition cost, it did not credit her for any personal time that she had taken to complete the course, which was differential treatment as compared to her white male counterparts.

Plaintiff received a right to sue notice from the Illinois Department of Human Rights ("IDHR") on October 31, 2024, and from the Equal Employment Opportunity Commission ("EEOC") on April 3, 2025. On January 28, 2025, she filed a nine-count Complaint, ECF No. 1, and later filed an amended pleading on April 7, 2025.[2] In response, Defendants filed an Answer, ECF No. 9, as well as the instant Partial Motion to Dismiss. The First Amended Complaint includes thirteen counts: (I) race discrimination in violation of the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101–5/10-104, against Rock Island; (II) sex discrimination in violation of the IHRA against Rock Island; (III) race and sex discrimination in violation of the IHRA against Rock Island; (IV) retaliation in violation of the IHRA against Rock Island; (V) race discrimination in violation of 42 U.S.C. § 1981, asserted via 42 U.S.C. § 1983, against Rock Island; (VI) discrimination in violation of the Equal Protection Clause and Due Process Clause, asserted via § 1983, against Rock Island; (VII) race discrimination in violation of § 1981 against McCloud, individually; (VIII) discrimination in violation of the Equal Protection Clause and Due Process Clause, asserted via § 1983, against McCloud individually, (IX) violation of the Illinois

---

[2] Plaintiff sought the Court's leave to file the First Amended Complaint, which the Court granted because Plaintiff was allowed to amend her complaint once as a matter of course via Federal Rule of Civil Procedure 15(a)(1)(B). *See* Apr. 7, 2025 Text Order.

Civil Rights Act of 2003 ("ICRA"), 740 ILCS 23/1–23-5, against Rock Island; (X) discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, against Rock Island; (XI) discrimination on the basis of sex in violation of Title VII against Rock Island; (XII) discrimination on the basis of race and sex in violation of Title VII against Rock Island; and (XIII) retaliation in violation of Title VII against Rock Island.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants move to dismiss Count III as duplicative of I and II, as well as Count XII as duplicative of Counts X and XI. Partial Mot. Dismiss 6–7. Defendants further move to partially dismiss Counts V, VI, VIII, IX, X, XI, XII and XIII because certain claims are assertedly time-barred. *Id.* at 7–9. Finally, Defendants seek to dismiss the due process claims in Counts VI and VIII. *Id.* at 10. Plaintiff concedes that some of Defendants arguments are correct—for example, she agrees that her due process claims should be dismissed, Resp. Partial Mot. Dismiss 2, ECF No. 11—but largely opposes Defendants' motion.

## DISCUSSION

### I. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Allegations are plausible when there is "enough fact to raise a reasonable expectation that discovery will reveal evidence" which supports the plaintiff's allegations. *Twombly*, 550 U.S. at 556. A court must take "[t]he complaint's well-pleaded factual allegations, though not its legal conclusions, . . . [as] true," *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir.

5

2013), and "draw all inferences in the light most favorable to the nonmoving party," *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014).

II. **Analysis**

As stated, the Partial Motion to Dismiss articulates three arguments: (1) Plaintiff's IHRA claim in Count III should be dismissed as duplicative of the IHRA claims in Counts I and II and her Title VII claim in Count XII should be dismissed as duplicative of her Title VII claims in Counts X and XI, Partial Mot. Dismiss 6–7; (2) Plaintiff has alleged certain claims that should be dismissed to the extent that they are time barred, *id.* at 7–9; and (3) the due process claims in Counts VI and VIII should be dismissed because Plaintiff fails to adequately allege an interest protected by the Due Process Clause, *id.* at 10. Plaintiff concedes that her due process claims should be dismissed. Resp. Partial Mot. Dismiss 2. Therefore, Plaintiff's due process claims asserted in Counts VI and VIII are DISMISSED. The Court takes up Defendants' other arguments in turn.

A. **Duplicative Counts**

Defendants argue that Count III, an intersectional IHRA count based upon Plaintiff's sex *and* race, is duplicative of Counts I and I, which are IHRA counts respectively premised upon Plaintiff's sex *or* race. Partial Mot. Dismiss 6–7. Defendants advance the same argument against Count XII, an intersectional Title VII count, asserting that it is duplicative of Counts X and XI, which again are respectively premised upon Plaintiff's sex or race. *Id.* Plaintiff argues that the intersectional claims are not duplicative because being discriminated against due to a combination of both race and gender is not the same as being discriminated against for either individual characteristic. Resp. Partial Mot. Dismiss 4–6. More specifically, she argues that black women can be subjected to discrimination which does not affect either white women or

6

black men. *Id.* While Plaintiff acknowledges that the Seventh Circuit has not explicitly recognized an intersectional claim before, she points to other circuits that have. *See id.* at 4 (first citing *Shazor v. Pro. Transit Mgmt., Ltd.*, 744 F.3d 948, 958 (6th Cir. 2014); then citing *Lam v. Univ. of Haw.*, 40 F.3d 1551, 1562 (9th Cir. 1994); then citing *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1416 (10th Cir. 1987); and then citing *Jefferies v. Harris Cnty. Cmty. Action Ass'n*, 615 F.2d 1025, 1032 (5th Cir. 1980)).

Defendants' duplication argument is based upon *Robinson v. City of Chicago*, No. 1:23-cv-03400, 2024 WL 3161662, at *2 (N.D. Ill. June 25, 2024), which in turn extensively discussed *Barrow v. Blouin*, 38 F. Supp. 3d 916, 920 (N.D. Ill. 2014). Partial Mot. Dismiss 6–7. "Courts have the authority to dismiss duplicative claims if they allege the same facts and the same injury." *Barrow v. Blouin*, 38 F. Supp. 3d 916, 920 (N.D. Ill. 2014). The court in *Barrow* was faced with an argument that the plaintiffs' unreasonable seizure claim was duplicative of the plaintiffs' false arrest claim. *Id.* The court agreed and dismissed the plaintiffs' false arrest claim, in large part because the only complained of seizure was their arrest—in other words, there was only one alleged injury based on the same facts. *Id.* at 920 & n.1.

Defendant's argument fails to persuade—*Barrow* is distinguishable from this case because Plaintiff's race-plus-sex claim could be based upon different facts or a different injury. For example, if further factual development reveals that white women and black men were not subjected to the same discriminatory treatment as black women, then the factual basis for Plaintiff's injury would be distinct from an injury based solely upon either her race or sex. *Cf. Shazor*, 744 F.3d at 958 ("[B]oth classifications—race and sex—are protected by Title VII. These characteristics do not exist in isolation. African American women are subjected to unique stereotypes that neither African American men nor white women must endure."). At this stage of

7

the litigation, Plaintiff has alleged enough facts to support legal theories based on either her race, sex, or race and sex—she need not extensively detail every element of all three theories. *See, e.g.*, *In re Generac Solar Power Sys. Mktg., Sales Pracs., & Prods. Liab. Litig.*, 735 F. Supp. 3d 1047, 1053 (E.D. Wis. 2024) ("[B]ecause a plaintiff does not need to plead facts that correspond to every element of a cause of action, a court may not reject a legal theory at the pleading stage simply because the plaintiff did not plead a fact that he must prove to prevail on that theory at trial."). Because Plaintiff's success on Counts III or XII would require showings distinct from those required for success on Counts I and II or Counts X and XI respectively, the Court declines to dismiss Counts III and XII.

### B. Statute of Limitations

Defendants advance many arguments based on the varying statutes of limitations that could apply to Plaintiff's claims. The Court first addresses the parties' positions regarding alleged discrimination which pre-dates the applicable filing periods before turning to the specific statutes of limitations which may apply to the statutes invoked by Plaintiff.

#### 1. Older Acts of Discrimination

An overarching theme in Defendants' arguments is their assertion that only the "discrete acts of alleged discrimination that occurred" within the relevant filing periods are actionable. Partial Mot. Dismiss 7–9. Plaintiff responds that the "earlier acts of discriminatory conduct should remain admissible" and that she "does not contest Defendants' Motion on these points so long as . . . she is not prohibited from later introducing relevant and admissible evidence of prior acts of discrimination." Resp. Partial Mot. Dismiss 6–7.

The Supreme Court in *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002), discussed two distinct categories of actionable unlawful employment practices under

Title VII: claims based upon discrete acts and hostile environment claims. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–18 (2002). Each claim based upon a discrete act requires the timely filing of an employment-discrimination charge. *See id.* at 113 ("Each discrete discriminatory act starts a new clock for filing charges alleging that act."). As to "[t]he existence of past acts and the employee's prior knowledge of their occurrence," the Supreme Court noted that Title VII does not "bar an employee from using the prior acts as background evidence in support of a timely claim." *Id.* Conversely, hostile environment claims "occur[] over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* at 115. "Provided that an act contributing to the [hostile environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117. Therefore, older acts of discrimination may be relevant background evidence supporting a discrete act claim or be actionable themselves if part of a hostile environment claim—it depends upon the legal theory being pursued and the complained of employment practice. Whether older conduct should be considered time-barred is therefore often a contextual and fact-driven question. *Cf. Milligan-Grimstad v. Stanley*, 877 F.3d 705, 712–13 (7th Cir. 2017); *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 727 (7th Cir. 2004). The principles discussed in *Morgan* are not limited to Title VII claims; they are also applicable to §1983 claims and ICRA claims. *See, e.g.*, *Howard v. Cook Cnty. Sheriff's Off.*, No. 17 C 8146, 2022 WL 1404833, at *6 (N.D. Ill. May 4, 2022) (collecting cases extending *Morgan* beyond Title VII claims).

  The parties are imprecise in their positions regarding the older acts of discrimination. Defendants note that Plaintiff "blanketly incorporates all allegations from the [F]irst [A]mended [C]omplaint's 'Common Allegations of Fact' section." Partial Mot. Dismiss 9 (citing First Am.

9

Compl. ¶¶ 128, 134, 140, 146).  In the counts themselves, Plaintiff more specifically identifies as discriminatory Rock Island's conduct "when it denied her a promotion to lieutenant, promoted her to lieutenant with the least seniority, denied her training opportunities, investigated and disciplined her more harshly, and gave her less favorable performance reviews."  First Am. Compl. ¶¶ 73, 79, 85, 91, 129, 135, 141, 147.  Defendants request that the Court find that "[a]ll discrete acts of discrimination" prior to the relevant filing dates are time-barred, but do not identify which allegations should be considered discrete acts.  Partial Mot. Dismiss 7–9.  For her part, Plaintiff does little to clarify her view on this issue—she asserts that "[h]er claims with respect to the discrete acts of discrimination that occurred within the limitations periods are not time barred" and that the "earlier acts of discriminatory conduct should remain admissible," again without discussing any particular conduct.  Resp. Partial Mot. Dismiss 6–7.  Her theory for why those prior acts should be admissible is left unstated.[3]

"Although the federal pleading standards set forth in Federal Rule of Civil Procedure 8(a) do not require a complaint to identify the applicable law, those standards also do not provide cover for a plaintiff who fails to identify the applicable legal theory in response to a motion to dismiss."  *Woods v. Wickes Furniture Co.*, No. 09 CV 300, 2011 WL 3205347, at *7 (N.D. Ill. July 28, 2011) (citing *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999)).  Plaintiff does not invoke a hostile environment theory and instead states that she does not oppose Defendants' argument so long as "she is not prohibited from later introducing relevant and admissible evidence of prior acts of discrimination."  Resp. Mot. Dismiss 7.  This

---

[3] The only citation provided by Plaintiff in support of her admissibility argument, *Minority Police Officers Association of South Bend v. City of South Bend*, 721 F.2d 197, 201 (7th Cir. 1983), discusses factual overlap between various claims for purposes of a "final judgment as to one or more, but fewer than all, claims or parties" under Federal Rule of Civil Procedure 54(b).  This provides little insight into how Plaintiff hopes to use facts regarding older incidents of discrimination.

language mirrors *Morgan*'s discussion of "using the prior acts as background evidence in support of a timely claim" based upon discrete acts, as opposed to a hostile environment claim. *See Morgan*, 536 U.S. at 113. Moreover, the employment practices which Plaintiff alleges were discriminatory are based upon discrete acts, such as failures to promote. *See, e.g.*, *Adams v. City of Indianapolis*, 742 F.3d 720, 730 (7th Cir. 2014) (finding that each failure to promote was a discrete act). The Court finds that Plaintiff's First Amended Complaint relies solely upon discrete acts. Therefore, to the extent the discrete acts are time-barred by the applicable statute of limitations, they are not independently actionable. *See Morgan*, 536 U.S. at 113.

### 2. Specific Statutes of Limitation

Turning to more specific disputes, Defendants assert that Plaintiff's § 1983 and ICRA claims are subject to a two-year statute of limitations and that Plaintiff's Title VII claims are subject to a 300-day time-bar. Partial Mot. Dismiss 7–9. Plaintiff concedes that Defendants correctly identify the relevant statutes of limitations except with respect to her claims in Count V, which invoke 42 U.S.C. § 1981.

The ICRA claims are indeed subject to a two-year statute of limitations, 740 ILCS 23/5(b), as are the § 1983 claims because federal courts borrow a statute of limitations from the applicable state's personal injury laws, which in this case would be Illinois's two-year statute of limitations, *see, e.g.*, *Ray v. Maher*, 662 F.3d 770, 772 (7th Cir. 2011) (stating that federal courts look to a state's personal injury laws to determine the statute of limitations for § 1983 claims (citing 42 U.S.C. § 1988(a))); 735 ILCS 5/13-202 (setting a two-year statute of limitations for personal injury claims). As for the Title VII claims, the only actionable discrete acts are those that occurred within the 300 days prior to Plaintiff's filing of an EEOC charge. *See* 42 U.S.C. § 2000e-5(e)(1); *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 839 (7th Cir. 2014).

Therefore, the only issue is whether Plaintiff's § 1981 claim for discrete acts is subject to either a two-year or four-year statute of limitations.

Congress enacted 28 U.S.C. § 1658 as a catchall statute of limitations in 1990. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 372 (2004).[4] The Supreme Court held in *Jones* that the four-year statute of limitations applies to causes of action "if the plaintiff's claim against the defendant was made possible by a post–1990 enactment." *Id.* at 382. When 42 U.S.C § 1981 was first enacted it provided that "all persons [within the jurisdiction of the United States] shall have the same right, in every State and Territory ... to make and enforce contracts ... as is enjoyed by white citizens." *Id.* at 372 (alterations in original) (quotation marks omitted). As originally enacted, § 1981 did not apply to hostile work environment, wrongful discharge, or refusal to transfer claims. *Id.* at 373. However, in 1991 Congress added a subsection that defined the term "make and enforce contracts" to encompass the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* (quotation marks omitted). Therefore, post-contract-formation claims under § 1981—such as hostile work environment, failure to promote, disparate treatment, and retaliation claims—were made possible by a post-1990 enactment, such that they are subject to § 1658's four-year statute of limitations, as opposed to a statute of limitations based upon a state's personal injury laws. *Dandy v. United Parcel Serv., Inc.*, 388 F. 3d 263, 269 (7th Cir. 2004); *see also Edmond v. City of Chicago*, No. 17-cv-04858, 2018 WL 5994929, at *6–7 (N.D. Ill. Nov. 15, 2018) (applying § 1658's four-year statute of limitation to a post-formation § 1981 claim). The Court finds that Plaintiff's § 1981 claims in Count V are governed by a four-year statute of limitations.

---

[4] "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a).

### C. Leave to Amend

When a motion to dismiss is granted, a court must decide whether to grant leave to amend, which ordinarily should be granted after the initial dismissal of a claim unless amendment would be futile, among other reasons. *See, e.g.*, *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). Moreover, where a plaintiff fails to ask for leave to amend, a court need not grant such leave *sua sponte*. *James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 400–01 (7th Cir. 2006). Here, the only aspects of the First Amended Complaint which are dismissed are Plaintiff's due process claims and claims premised upon discrete, time-barred acts. Plaintiff agreed that dismissal in both instances was proper, and did not request leave to amend. *See* Resp. Partial Mot. Dismiss 2, 6–7. Therefore, leave to amend is unsought and unwarranted.

### CONCLUSION

Accordingly, Defendants City of Rock Island and Timothy J. McCloud's Partial Motion to Dismiss Plaintiff's First Amended Complaint and Supporting Memorandum, ECF No. 10, is GRANTED IN PART and DENIED IN PART. Plaintiff's due process claims asserted in Counts VI and VIII are DISMISSED. To the extent that the First Amended Complaint asserts claims based upon discrete acts which are barred by the applicable statutes of limitations identified in this Order, such claims are DISMISSED.

Entered this 29th day of July, 2025.

                                                    s/ Sara Darrow
                                                    SARA DARROW
                                        CHIEF UNITED STATES DISTRICT JUDGE